# UNITED STATES *v.* TITLE GUARANTY AND SURETY COMPANY.

BONDS; GOVERNMENT CONTRACTS, PROPOSALS FOR; PRINCIPAL AND SURETY.

1. While, under sec. 3709, Rev. Stat. as amended by the act of Congress of January 27, 1894 (28 Stat. at L. 33, chap. 22, U. S. Comp. Stat. 1901, p. 2484), the duty of finally accepting or rejecting bids to furnish government supplies is imposed upon the board of awards thereby created, which duty cannot be lawfully delegated, the surety on the bond of a bidder who refused to make a contract after his bid had been accepted cannot defeat an action on the bond on the ground that the bids had been advertised, the bid in question accepted, and notice of acceptance given by a departmental body known as the general supply committee, and not by the board of awards, where it appears that the board approved the action of the committee, which had acted merely as agent of the board in the premises.

2. Failure of a successful bidder for a government supply contract to sign and return within the time limited by the specifications, a properly prepared form of contract containing blanks for his signature and those of the proper departmental officers, submitted to him for his signature, is a breach of the condition of his bond that if an award should be made him, he will enter into such a contract.

No. 2180.   Submitted November 4, 1910.   Decided December 5, 1910.

HEARING on an appeal by the plaintiff, the United States, from a judgment of the Supreme Court of the District of Columbia sustaining a demurrer to an amended declaration in an action on a bond.                              *Reversed.*

The COURT in the opinion stated the facts as follows:

This is an appeal from a judgment of the supreme court of the District of Columbia sustaining a demurrer, with final judgment thereon, to an amended declaration in an action in which the United States, plaintiff below, is suing on a bond

executed by the Title Guaranty and Surety Company, defendant, a corporation organized under the laws of the State of Pennsylvania. The condition of the bond is that, in case of the award to one Du Perow of a contract for furnishing supplies and electrical apparatus for use in the several departments of the United States government, he would enter into such contract and give bond to secure its faithful performance.

The declaration alleges in substance that on the 20th of February, 1909, advertisements for proposals were issued by a certain committee, known as the general supply committee, which is composed of individuals each duly appointed by the head of each one of the departments and of certain establishments of the United States government, and authorized to act as the representative of the department or establishment by which he was appointed; that the committee advised collectively, but each member thereof acted in pursuance of the authority vested in him as the separate agent and representative of the head of the particular department or establishment from which he was appointed; that on the 10th of April, 1910, in response to the advertisements, one M. Du Perow submitted a bid or proposal in which he offered to furnish certain electrical supplies; and that accompanying said proposal was a bond executed by the defendant surety company as guarantor, in which it bound itself unto the United States in the sum of $2,000 that, "in the event that a contract for furnishing supplies to any of the executive departments or independent establishments mentioned above, according to the advertisement and specifications of February 20, 1909, shall be awarded to M. Du Perow, that he, the said M. Du Perow, will, within the time limited by the specifications, enter into and duly execute, as required by the said specifications, a contract accordingly, and this guaranty is based upon and governed by the said specifications as to its scope and extent; and in case of failure of the said M. Du Perow to enter into contract as above, that we will forfeit to the United States the sum of two thousand dollars ($2,000), for which forfeiture we will be jointly and severally liable as

fixed and settled damages, and not as a penalty to be reduced or diminished."

It is further alleged that certain of the proposals contained in the bid of Du Perow were accepted and approved by the board of awards, and that thereafter the general supply committee notified Du Perow of the acceptance and approval of his proposal, and submitted a contract and bond as provided for in the bid, with a request that Du Perow should execute the same in accordance with the terms of his proposal, and return it to the general supply committee. This it is alleged Du Perow failed to do within the time limited in the specifications, and as a result of Du Perow's failure to enter into the contract and execute the bond for its faithful performance, as required, the defendant surety company became indebted to the plaintiff in the sum of $2,000, which claim forms the basis of this suit.

Defendant demurred to the declaration on the following grounds: "(1) That the amended declaration does not aver the acceptance of the bid of defendant's principal by any person or persons authorized in law to accept the same. (2) That 'Exhibit C,' being the contract alleged to have been tendered to said principal, is no contract, because, until signed by the head of the department or establishment alleged to have accepted such bid, it did not indicate with what department or establishment the contract was to be made, and by which it was accepted."

*Mr. Clarence R. Wilson,* United States Attorney for the District of Columbia, *Mr. Reginald S. Huidekoper,* Assistant, and *Mr. Chapman W. Maupin* for appellant.

*Messrs. Leckie, Fulton, & Cox* and *Mr. Philip Walker* for appellee.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

The act of Congress under which the United States and

Du Perow were proceeding is sec. 3709 of the Revised Statutes, as amended by the act of January 27, 1894 (28 Stat. at L. 33, chap. 22, U. S. Comp. Stat. 1901, p. 2484), which is as follows: "All purchases and contracts for supplies and services in any of the departments of the government, except for personal services, shall be made by advertising a sufficient time previously for proposals respecting the same, when the public exigencies do not require the immediate delivery of the articles, or performance of the service. When immediate delivery or performance is required by the public exigency, the articles or service required may be procured by open purchase or contract, at the places and in the manner in which such articles are usually bought and sold, or such services engaged between individuals. And the advertisement for such proposals shall be made by all the executive departments, including the Department of Labor, the United States Fish Commission, the Interstate Commerce Commission, the Smithsonian Institution, the Government Printing Office, the government of the District of Columbia, and the Superintendent of the State, War, and Navy Building, except for paper and materials for use of the Government Printing Office, and materials used in the work of the Bureau of Engraving and Printing, which shall continue to be advertised for and purchased as now provided by law, on the same days, and shall each designate 2 o'clock post meridian of such days for the opening of all such proposals in each department and other government establishment in the city of Washington; and the Secretary of the Treasury shall designate the day or days in each year for the opening of such proposals, and give due notice thereof to the other departments and government establishments. Such proposals shall be opened in the usual way and schedules thereof duly prepared, and, together with the statement of the proposed action of each department and government establishment thereon, shall be submitted to a board consisting of one of the Assistant Secretaries of the Treasury and Interior Departments and one of the Assistant Postmasters-General, who shall be designated by the heads of said departments and the Postmaster-General respectively, at a meeting

to be called by the official of the Treasury Department, who shall be chairman thereof, and said board shall carefully examine and compare all the proposals so submitted, and recommend the acceptance or rejection of any or all of said proposals. And if any or all of such proposals shall be rejected, advertisements for proposals shall again be invited and proceeded with in the same manner."

It was undoubtedly the intention of Congress by this act to impose upon the assistant secretaries named therein, known as the board of awards, the duty of inquiring into the merits of the respective bids. For some reason, this system seems to have proved impracticable, and an executive order was issued on May 13, 1909, for the purpose of more effectively carrying into effect the spirit of the act. The order provided that a committee to be composed of one representative from each of the departments of the government and from "the following government establishments, to wit: Government Printing Office, Interstate Commerce Commission, Smithsonian Institution, Superintendent of State, War, and Navy Building, and the government of the District of Columbia, appointed by the head of each department and establishment, pursuant to the recommendation of the board of awards, be and is hereby created a body to be known as the general supply committee, of which the secretary of the board of awards shall be chairman; and the said committee shall adopt its own rules for organization and the transaction of business, subject to the directions herein specifically set forth; and while the members of said committee shall advise together collectively, yet each member shall, in performing the several acts hereinafter directed, act as the separate agent and representative of the particular department or establishment from which he is appointed." After thus defining the organization of the general supply committee, the order required this committee, after ascertaining the supplies necessary for the various departments or establishments of the government, to advertise for proposals to furnish said supplies, in accordance with the provisions of the act of Congress. These proposals were required to be submitted to the board of awards,

and the recommendation of the board was to be acted upon in accordance with the provisions of the act of Congress.

It appears that in this instance the general supply committee called for bids, and upon the day set open the same, and agreed upon the bids that should be accepted, submitting their action to the board of awards for approval. The action of the committee with respect to the Du Perow bid was approved. He was duly notified of the acceptance and approval. A contract in the usual form was presented to Du Perow for his signature. The contract provided the blank space or spaces for the contractor to sign, and below were spaces in blank for the secretary of the various departments of the government to sign in execution of the contract on behalf of the United States. When the contract was presented Du Perow refused to sign it, and this action was brought upon the bond given to secure the government against his failure to so execute the contract.

The sole defense to this action is that the general supply committee had no authority to accept the bid of Du Perow, and, therefore, Du Perow was not obliged to enter into the contract. It is contended that the acceptance of the bid or proposal was a duty imposed by law upon the board of awards, and could not lawfully be delegated to the general supply committee. On this point it is alleged in the declaration "that thereafter certain of the proposals as contained in the bid of the said M. Du Perow as aforesaid, for supplying articles to the several executive departments and independent establishments of the United States government for the fiscal year ending June 30th, A. D. 1910, were accepted by the said general supply committee, acting as aforesaid, and the said action was approved by the legally constituted board authorized to approve the same, commonly known as the board of awards, of which said acceptance and approval the said M. Du Perow was duly notified by the said general supply committee." The notice addressed to M. Du Perow was headed, "Office of the General Supply Committee, United States Executive Departments and Independent Establishments," and signed by T. C. S. Marshall, vice-chairman, in which notice Du Perow was informed that his proposals

for certain articles therein specified had "been accepted by the general supply committee, and such action approved by the board of awards." It will be observed that the acceptance was in reality the act of the board of awards, the general supply committee performing the mere ministerial duty of working out the details and submitting them for the approval of the board.

Unquestionably where powers requiring the exercise of judgment and discretion are conferred upon executive officers, they cannot be delegated. It follows, therefore, that neither the head of a department nor the board of awards could have delegated to the general supply committee full power to advertise for bids, accept proposals, and enter into contracts. But that is not what was done in this case. By direction of the board of awards, the body in which this power resided under the act of Congress, the general supply Committee advertised for bids for the furnishing of supplies for the use of the various departments and establishments of the government. This was a mere ministerial act, which required neither the exercise of judgment or of discretion. When the proposals or bids were submitted, Du Perow's among others, the general supply committee examined them and made a recommendation in reference thereto to the board of awards. The board was then called upon to exercise the power of decision vested in it to either approve or disapprove the recommendation. An approval constituted an acceptance by the board, and the mere ministerial act of notifying Du Perow of its acceptance could be accomplished through any agency the board might choose to select. The acceptance was the act of the board, and the contract submitted to Du Perow for execution must, according to the declaration, be presumed to have in every respect complied with the law.

It will hardly be denied that, under this state of facts, had the United States refused to enter into the contract, Du Perow would have had a cause of action in the court of claims. The submission of the bid, and its approval and acceptance, constituted a binding contract, from which the government could not escape merely because the bidder had been notified of its acceptance by an agent of the officer or officers authorized to

approve and accept the proposal. If the contract was one from which the United States could not escape, it is not apparent how Du Perow, under the terms of acceptance and notice here alleged and admitted to be true, can find an avenue of escape. He submitted his proposal to furnish the supplies with his eyes open. The transaction was in all respects at arm's length. His proposal was submitted by the intermediary agent, the general supply committee, to the legally authorized authority, the board of awards, for its approval. The proposal was approved; and because the general supply committee, instead of the board of awards, notified Du Perow of the acceptance, he seeks to escape from his obligation.

The difficulty here is that too much dignity has been accorded to the work performed by the general supply committee. It did the detail work for the board of awards, such as might have been accomplished by clerks employed for that purpose. Its acts had no force until approved by the board, as was done in this instance.

The defense here interposed is not well founded. The point is too technical to appeal to a sense of justice, certainly in the absence of any possible damage that could accrue to the contractor by reason of the source from which the notice of acceptance emanated. The contract submitted for Du Perow's signature was in all respects in accord with his proposal and bid. It contained the blank spaces for the proper heads of the various departments of the government for which supplies were to be furnished to sign on behalf of the United States. It was Du Perow's duty when this contract was presented to sign it and execute a bond for its faithful performance. His failure to do so gave the United States a cause of action against his bondsman.

It is hardly necessary to suggest that the defendant bonding company can rise no higher than Du Perow. In this case it cannot avail itself of any defense that would not be open to Du Perow were he a party defendant. The judgment is reversed with costs, and the cause remanded for further proceedings not inconsistent with this opinion.          *Reversed.*